# No. 13-55378

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**B. Benedict Waters,**
    *Plaintiff and Appellant,*

    vs.

**Experian Information Solutions, Incorporated**, et al.,
    *Defendants and Appellees.*

**U. S. District Court, Case No. 02:12-CV-04895-CAS-AJWx**

**Appeal - U. S. District Court Central District of California**
*Christina Ann Snyder, Judge*

# Reply Brief

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DEC 0 9 2013

FILED
DOCKETED_____ DATE _____ INITIAL

B. Benedict Waters

**Plaintiff – Appellant**, *pro se*

6230 Wilshire Blvd., #182 ● Los Angeles, California 90048 ● 310-967-3943

# Table of Contents

I.    **Objection re Unsupported Assertions**........................... 1

II.   **Reply Introduction** ............................................ 1

III.  **The <u>Record</u> Objectively Shows The Jewish Lawyers Are Favored While Plaintiff's Papers <u>And</u> Arguments Are Ignored** ........ 2 - 4

IV.   **Misrepresenting That General Order 349 Governed Venue Is Judge Shopping And Informs Of Defendants' Own Assessment Of Biased Against Plaintiff** ...................... 5 - 8

V.    **Under Supreme Court Instruction And Ninth Circuit Precedents A Dismissal Under Inherent Authority Sans An Explicit Finding of Bad Faith Is Reversed** ........................... 8 - 9

VI.   **The Assertion In An Unsupported <u>Caption</u> That Snyder, j., Was Confused About Dates Is Belied By The Records Before This Court** ........................................ 9 - 12

VII.  **Misrepresenting That Plaintiff's Credit Reports Exclusively Furnished Only To Experian's Lawyers Is Rather Brazen, Informs Of No Defense To Violations Of Federal Law But Record Still Not Ripe For Review** ...................... 13 - 16

      A.    **Experian Gave Plaintiff's Credit Reports To Other Third Parties** ............................................. 13

      B.    **The Record Is Not Developed Sufficiently For Review** ..... 14

      C.    **Why The Fifth Circuit Issued Its Order Remains A Mystery** . 15

      D.    **Business Need Argument Is Makeweight And A Jury Question** ......................................... 15

      E.    **Credit Reports May Only Be Pulled For One Of Six Reasons** ......................................... 15

**F.**   **The Plain Language Of The FCRA Does Not Support
Defendants** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**G.**   **The Ninth Circuit Has Defined A Consumer Report
Using The Plain Language Of The Statute –
Statutory Construction 101** . . . . . . . . . . . . . . . . . . . . . . . . 16 - 17

**VIII.** **Conclusion**       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# Index of Authorities

## SUPREME COURT DECISIONS

**Roadway Express, Inc. v. Piper** (1980)

    *447 U.S. 752, 764* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**United States Indus./Fed. Sheet Metals, Inc. v.**
**Director, Office of Workers' Comp. Programs** (1982)

    *455 U.S. 608, 613* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## NINTH CIRCUIT LAW

**Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.** (9th Cir. 2002)

    *289 F.3d 589, 595* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**\*\*Hansen v. Morgan** (9th Cir.1978)

    *582 F.2d 1214, 1217, 1219* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13, 15, **16**

**Jones Stevedoring Co. v.**
**Director, Office of Workers' Comp. Programs** (9th Cir. 1997)

    *133 F.3d 683, 691* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**\*\*Mone v. Dranow** (9th Cir. 1991)

    *945 F.2d 306, 308* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Moske v. Evergreen Dynasty Corp.** (9th Cir. 2007)

    *500 F.3d 1047, 1061* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**St. Paul Guardian Ins. Co. v. Johnson** (5th Cir. 1989)

    *884 F.2d 881, 883* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**\*\*United States v. Kahaluu Const.** (9th Cir. 1988)
  857 F.2d 600, 603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**United States v. Stoneberger** (9th Cir.1986)
  805 F.2d 1391, 1393 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Yagman v. Republic Ins.** (9th Cir.1993)
  987 F.2d 622, 628 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Zambrano v. City of Tustin** (9th Cir. 1981)
  885 F.2d 1473, 1478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**\*\* = Ninth Circuit precedents primarily relied upon by Plaintiff *pro se*.**

## SISTER CIRCUIT CASES

**Columbus-Am. Discovery Grp. v. Alt. Mut. Ins. Co.** (4th Cir. 1995)
  56 F.3d 556, 575-76 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

## FEDERAL STATUTES

15 U.S.C. § 1681b(a)(3)(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

15 U.S.C. § 1681e(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 13

15 U.S.C. § 1681n . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 1681o . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 1681p . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

## NINTH CIRCUIT RULES

Circuit Rule 28-2.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

Circuit Rule 30-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## LOCAL GENERAL ORDERS

General Order 01-01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

General Order 98-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6 - 8

General Order 98-3(1)(A)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

General Order 98-3(1)(A)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

General Order 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

General Order 349-A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

## OTHER AUTHORITIES

Chi Chi Wu & Elizabeth DeArmond, FAIR CREDIT REPORTING (7th ed. 2011)
    § 7.2.8.3 Business Need to Review A Consumer's Account, p. 292 . . . . .  15


Judiciary Act of 1891 (26 Stat. 826) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

## I.    Objection re Unsupported Assertions

Although proper to move to strike the Answering Brief, <u>Circuit Rule 30-2(a)</u>, *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.* (9*th* *Cir. 2002) 289 F.3d 589, 595*, for rules violations, Plaintiff hereby objects to and objects to consideration of each and every assertion of a matter in the record advanced in Defendants' <u>Answering Brief</u>, **DktEntry: 13-1**, that fails to cite to a location in the excerpts of record containing support for the matter asserted.

## II.    Reply Introduction

We have filed a motion for sanctions addressing about a **<u>third</u>** of the prevarications Mr. Garrett shotgunned in the <u>Answering Brief</u> such as his Willie Horton-esque falsehood of *"threats of physical violence"*, his obscenely untrue presentment depicting that each of the recipients of Plaintiff's credit reports was one of Experian's lawyers and his fallacy that Plaintiff *"refused"* to comply with a court order.  Mr. Garrett's work is a model of arrogance.

Our position remains that the FCRA issues are not ripe for review.  But Mr. Garrett has, in addition to his Willie Horton card, sought to portray Plaintiff as simply a disgruntled black litigant:  *"Waters also argued there was 'no possibility' he could obtain a fair hearing because he is African-American, whereas both Judge Snyder and "Defendants' lawyers are Jews."* <u>Answering Brief</u>, **DktEntry: 13-1, p. 16, ¶ 1** (int. p. 9).  We're **<u>not</u>** backing down.

III.  **The <u>Record</u> Objectively Shows The Jewish Lawyers Are Favored While The Black Plaintiff's Papers <u>And</u> Arguments Are Ignored**

Snyder, j., posited a question that really goes to the heart of the issue of judicial bias: *"Among other things, plaintiff must address why the alleged actions by defendants were unlawful in light of the fact that defendants were client and lawyer during the relevant time periods."* **ER 16, ¶ 4.** <u>**The facts were in front of Snyder, j. all along in our papers**</u>.

As we have pointed out, many times, in our related appeals, once again Snyder, j. did not read our papers—just pretending to do so. [1] In this instance implying that the <u>Supplemental Complaint</u>, **DN 52, pp. 13-29**, had been read.  See <u>Dismissal Sanction Order</u>, **ER 16, ¶ 2.**

Some of the *"alleged actions" "were unlawful"* as a matter of statutory and circuit law: **Because** Experian's lawyers, acting as its agent, <u>Supplemental Complaint</u> - **Appellant's SER 2:14-16**, and thus rendering all Defendants' liable under common law principles of agency, furnished Plaintiff's credit report to other <u>**third**</u> parties, **Appellant's SER 2:22-24**, *including* Eric Larson.  The date of the occurrence, *"2010 March 01,"* is given as well as the exact address where Plaintiff credit reports were delivered to Mr. Larson. ***Id.***

---

[1] Her actual practice is to simply regurgitate whatever her Jewish colleagues represented as the content of our papers in a manner suggesting her personal perusal when there had been none.

The <u>Supplemental Complaint</u> goes on to state that Larson was not "*ever a lawyer, employee, agent, subagent or independent contractor of Defendants*." **Appellant's SER 3:1-3.** The <u>Supplemental Complaint</u> alleges that at no time was there ever between Plaintiff and Mr. Larson a business transaction, business relationship, or any other transaction or relationship re credit, insurance eligibility, employment or licensing. **Appellant's SER 3:4-8.**

The Supplemental Complaint details one of the FCRA torts committed on "*2010 June 09*," giving the full detail of Plaintiff's credit reports being delivered to Kimberly Reichert, **Appellant's SER 3:15-20**, including the exact address where Plaintiff's credit report was delivered to Ms. Reichert. The <u>Supplemental Complaint</u> goes on to state that Reichert was not "*ever a lawyer, employee, agent, subagent or independent contractor of Defendants*." **Appellant's SER 3:26-28.**

The <u>Supplemental Complaint</u> alleges that at no time was there ever between Plaintiff and Reichert a business transaction, business relationship, or any other transaction or relationship re credit, insurance eligibility, employment or licensing. **Appellant's SER 4:1-5.**

Neither Larson or Reichert certified a permissible purpose for use of the reports as ***required*** by <u>15 U.S.C. § 1681e(a)</u>. **Appellant's SER 2:26-27 and 3:18-20.**

Experian's agents in releasing Plaintiff's credit reports to the public and in furnishing Plaintiff's credit reports to the above **third** parties did so knowing beforehand (such knowledge imputed to Experian, the principal, again under common law principles of agency) that the credit reports would **not** be used for a permissible purpose. **Appellant's SER 2:26-27 and 3:18-20**. Such knowledge also violated 15 U.S.C. § 1681e(a).

Under the plain statutory language of the FCRA, a violation of any of its requirements is actionable. 15 U.S.C. §§ 1681n & o; see **Hansen**, *infra, 582 F.2d at 1219* ("*These sections create civil liability for willful (§ 1681n) or negligent (§ 1681o ) noncompliance by a consumer reporting agency . . . who fails to comply with 'any requirement imposed under this subchapter with respect to any consumer . . . .'* ").

The Supplemental Complaint, which Snyder, j., claims to have read, states Claims for Relief. See **Hansen**, *infra, at 1217* (general reliance on 1681b coupled with factors relevant to application of FCRA sufficient).

Snyder, j. pretending to the contrary, never actually read the Supplemental Complaint. We have consistently and unerringly pointed out time after time in appeal after appeal where Snyder, j. clearly did not read our papers while professing that she had; such precludes a fair hearing. We do not yield; her ruling, some of which require **time travel**, are impressively slanted to her Jewish fellows.

**IV.    Misrepresenting That General Order 349 Governed Venue Is Judge Shopping And Informs Of Defendants' Own Assessment Of Biased Against Plaintiff**

Mr. Garrett directly asserted to the Ninth Circuit Court of Appeals that:

*"But as the Central District's **rules** unambiguously provide, venue was proper **only** in the Central District's Western Division."*

**Experian AB 22, ¶ 1.**

He said that *". . .    the Central District adopted* <u>General Order 349</u>, *which provides the* <u>proper method</u> *for allocating cases among its three divisions.*  **Experian AB 24 ¶ 2**

According to Mr. Garrett, *"Pursuant to Central District General Order 349, however, a case* <u>must</u> *be assigned to the* Western *Division . . . ."*

**Experian AB 19-20.**

Mr. Garrett insisted that, under General Order 349, three conditions, and **all** three conditions had to be met in order for a case to be heard in the **Southern** Division.    *"<u>As relevant here</u>, General Order 349 provides that a case may be filed in the Southern Division* <u>only</u>  *where: (a) each plaintiff resides in the Southern Division or in a place outside the remainder of the Central District of*

*California,* **and** *(b) each named defendant resides in the Southern Division or in a place outside the remainder of the Central District of California,* **and** *(c) all claims arose in the Southern Division or in a place outside the remainder of the Central District of California. C.D. Cal. Gen. Order 349(1)(A)(i)(a)."*

**Experian AB 24 ¶ 2.**

He said *"Where* **any** *of those criteria are not satisfied . . . civil cases shall be assigned to the Western Division.' . . . Gen. Order 349(1)(A)(iii)."*

***Id.***

Mr. Garrett lied.

The governing General Order is **not** 349 but General Order **98-3**.

General Order **349** was ***amended*** by **349-A** in **1995**. G.O. 349-A was in turn amended in **1998** by **General Order 98-3**. G.O. 98-3 had a minor revision in 2001 (G. O. 01-01). General Order **98-3** requires **1** factor be met; **not** 3.

In our Opening Brief we relied on circuit law and applied this law to the facts establishing venue as properly in the **Southern** Division. **AOB, DktEntry: 10-1 at 38-42** (int. pp. 23-27). This is uncontroverted. Answering Brief, *passim.*

Rather, Mr. Garrett writes his version of *The Walking Dead*; his attempted vivification of long-dead General Order 349 is outrageous and a desperate act.

Under two factors of <u>General Order 98-3</u> (only **one** needed), the **Southern** Division is the correct venue as: (1) a "*majority*" of Defendants either <u>reside</u> *in* the **Southern** Division *or* <u>outside</u> the Western Division or (2) a "*majority*" of Claims arose in the **Southern** Division at Experian's and <u>Jones, Day, Reavis & Pogue's</u> (JDRP) offices in Irvine, California. <u>Complaint</u>, **SER 84, ¶¶ 3-4**. Admitted-no denial. <u>FRCP 8(b)(6)</u>; <u>Answer</u>, **Appellant's SER 2, ¶¶ 3-4**.

Under <u>General Order 98-3</u> it is enough if a "***majority***" of the defendants <u>reside</u> *in* the **Southern** Division *or* <u>outside</u> the Western Division.

The **Southern** Division is Orange County, California. Hardeman lives in Irvine. <u>Defs' Memo Support Mo. Transfer</u>, **DN 14-1 at 5:24-26**. <u>Irvine is in Orange County</u>.

As well-known in the legal community, JDRP is headquartered in Washington, D.C. and Experian in Dublin, Ireland; both corporate "*residences*" well <u>outside</u> the Western Division.

Thus, of five defendants (counting 2 Does) a "*majority*" ( 3 of 5 ) of the defendants *reside in* the Southern Division *or outside* the Western Division.

The proper venue is the **Southern** Division because a "*majority*" ( 3 of 5 ) of the defendants <u>reside</u> *in* the Southern Division *or* <u>outside</u> the Western Division. See <u>General Order 98-3(1)(A)(b)</u>.

In fact, because the claims indisputably, **DN 14-1 at 5:24-26**, arose in Irvine, California, in the <u>Southern</u> Division, Section (1)(A)(c) of **General Order 98-3** is equally a mandatory basis for venue in the <u>Southern</u> Division.

Mr. Garrett, recognizing Snyder, j.'s, racial bigotry and personal bias, induced Judge Battaglia's clerk to leapfrog his transfer motion to the front of the line, then ignored controlling precedents and the facts establishing the correct venue as the **Southern** Division and now, in a contorted effort to keep this case before Snyder, j., tries to sneak a moribund general order past this Court. In other words—**judge shopping**.

## V.  Under Supreme Court Instruction And Ninth Circuit Precedents A Dismissal Under Inherent Authority Sans An Explicit Finding of Bad Faith Is Reversed

This case was dismissed on very **specific** grounds: The filing of the initial Complaint in *February* 2012 and the later filing in *June* 2012 of a **motion for leave to file a supplemental complaint**, per Snyder, j., violated a *second* pre-filing injunction, entered in *July* 2012. Under such a time-warp scenario, the absolute necessity for findings of wilfulness, bad faith, or fault of the Plaintiff is crystalline. **More so because neither pre-filing injunction is applicable**.

*"Dismissal is authorized only in 'extreme circumstances' **after** finding such is "due to willfulness, bad faith, or fault of the party.'* **United States v. Kahaluu Const.** *(9th Cir. 1988) 857 F.2d 600, 603."*

Where, as here, the dismissal sanction is based on inherent authority, there are *"factual and legal prerequisites"* to be completed **before** dismissal. ***Zambrano v. City of Tustin*** (9th Cir. 1981) 885 F.2d 1473, 1478. An **explicit** finding of bad faith is **mandatory** in the Ninth Circuit. *Id*.; ***Roadway Express, Inc. v. Piper*** (1980) 447 U.S. 752, 764 (*". . . because inherent powers are shielded from democratic controls, they must be exercised with restraint and discretion."*). *"[c]ourts may **not** invoke [inherent] powers **without** a 'specific finding of bad faith.' "* ***Yagman v. Republic Ins.*** (9th Cir.1993) 987 F.2d 622, 628 quoting ***United States v. Stoneberger*** (9th Cir.1986) 805 F.2d 1391, 1393; accord ***Zambrano***, supra, 885 F.2d at 1478 (*"To insure that restraint is properly exercised, [the Ninth Circuit] routinely insist[s] upon a finding of bad faith **before** sanctions may be imposed under the court's inherent power."*)

## VI.    The Assertion In An Unsupported <u>Caption</u> That Snyder, j., Was Confused About Dates Is Belied By The Records Before This Court

Mr. Garrett asserts **in a caption** that Snyder, j., was somehow *"confused"* *"over dates"*. <u>Answering Brief</u>, **DktEntry: 13-1 at 28** (int. p. 21). His assertion is unsupported and thus should and may not be considered. <u>Circuit Rule 28-2.8</u>.

In <u>Appeal No. 11-57272</u>, we briefed how Snyder, j. craftily **worded** the final order so as to wrongly imply our Rule 59(e) motion was untimely; a fact *coincidentally* but just as craftily alluding to our appeal as untimely.

In **Appeal No. 12-56464**, Snyder, j. **repeated** her trick—again wrongly implying our Rule 59(e) motion was untimely—and *almost* succeeded. We were compelled to bring a motion to overcome the Appellate Commissioner's partial dismissal (based on Snyder's wording) of our appeal as "*untimely*". See **ER 12**.

In this Appeal No. 13-55378, Snyder, j., sanctioned Plaintiff because (1) the Complaint was filed **February** 2012 and because (2) a motion for leave to file a supplemental complaint was filed **June** 2012 which Snyder, j., contended violated a pre-filing injunction "*entered*" **July** 2012. **ER 15-16**.

The record does not show any confusion, Mr. Garrett fails to point to any and Snyder, j., does not have her own time zone. The month of **July** never comes **before** the month of **January** or **before** the month of **June**.

In the Dismissal Sanction Order, **ER 15-17**, Snyder, j. unambiguously targeted the conduct as being "*On* February 6, 201 2, *plaintiff filed the instant action*" **ER 15, ¶ 3**, and "*On* June 1 8, 201 2, *plaintiff filed a motion for leave to file a supplemental complaint*", **ER 16, ¶ 2**. "*On* July 9, 201 2, *the Court clarified the steps plaintiff must take to file any pleading or motion . . . .*" **ER 15, ¶ 2**. The record, on its face, shows Snyder, j., **not** "*confused*", she recited **each** date of and then **described** the "*conduct*" the dismissal sanction was targeting.

A lot of canaries dropped dead in the mine over the argument that because the FCRA litigation was dismissed "*without prejudice*" somehow Plaintiff has "*an opportunity to cure his default*". Garrett's "*opportunity*" twist is sanctionable. **There is no such opportunity**. The FCRA violations were known March 2010. *Ipso jure*, statute of limitations expired March 2012. 15 U.S.C. § 1681p. He argued a statute of limitations possibility! Garrett Decl., **DN 18-1**, p. 2:19-20.

Snyder, j.'s game plan was one of delay. The motion for leave to file a supplemental complaint consisted of three pleadings (notice, **DN 51** motion, **DN 52**, proposed supplemental complaint, *id*.), the pretense that the second pre-filing injunction applied—which it clearly did not—would have required Plaintiff to post **$7,500** ($2,500 per pleading). **Forcing months and months of delay**.

Allowing Snyder, j. to ultimately dismiss for failure to prosecute. Neat plan.

We declined the gambit. We noted the second pre-filing injunction did not apply and left it at that. Snyder, j., being then unable to require a **$7,500** security and resultant delay, then just dismissed the case rather than the motion as stated in the Order to Show Cause. **ER 20** ("*. . . the Court hereby orders plaintiff to SHOW CAUSE . . . why the motion for leave to file a supplemental complaint should not be dismissed*".)

This case, of course, does not relate to towing or towing debts; the words "*tow*" "*towing*" and "*debt*" are not in the pleadings.  **United States Indus./Fed. Sheet Metals, Inc. v. Director, Office of Workers' Comp. Programs** *(1982) 455 U.S. 608, 613*; **Jones Stevedoring Co. v. Director, Office of Workers' Comp. Programs** *(9th Cir. 1997) 133 F.3d 683, 691* (the complaint and answer frame the issues to be adjudicated).  The underlying FCRA case has nothing to do with tows, towing or towing debts.

    "*Waters sued . . . alleging that Defendants violated the FCRA when . . . Experian shared the disputed credit information with its attorneys.*"

Answering Brief, **DktEntry 13-1, p. 8, ¶ 2 (int. p. 1)**. [2]

    Indeed, even Snyder, j., says this FCRA case relates not to towing but rather that it arose from litigation that pertains to towing.  "*This action arose from litigation pertaining to the towing of plaintiff's vehicle . . . .*" **ER 16, ¶ 3**.

---

    [2] We have no idea what Mr. Garrett is alluding to re "*disputed credit information.*"  His assertion is disingenuous at best.  Defendants took the position in the 2009 and 2007 cases, repeating it many times on appeal, that Plaintiff was suing not over credit information but the "***validity of tows***".  Second, nothing was "*shared*", Experian had to obtain Plaintiff's credit reports in the usual manner just like any other FCRA "*person*".  See **AOB DktEntry: 10-1, pp. 75-76 (int. pp. 60-61)**.  Last, the information Experian's "*agents*" spread around was much, much more than credit information, including personal and extremely confidential information such as Plaintiff's "*social security number.*"  **AOB DktEntry: 10-1, p. 67 ¶ 2 (int. p. 52)**.

**VII.    Misrepresenting That Plaintiff's Credit Reports Exclusively Furnished Only To Experian's Lawyers Is Rather Brazen, Informs Of No Defense To Violations Of Federal Law But Record Still Not Ripe For Review**

### A.    Experian Gave Plaintiff's Credit Reports To Other Third Parties

Experian, through its "*agents*", furnished Plaintiff's credit reports to several FCRA "*persons*" [3/] – none of whom had any connection or relationship with Plaintiff. [4/] In violation of 15 U.S.C. § 1681e(a)'s requirement, prior to furnishing Plaintiff's credit reports, a certification as to a permissible use was never first obtained [5/] and, in fact, Experian and its agents knew **beforehand** that these other **third** parties would **not** use Plaintiff credit reports for a permissible purpose; scienter violating a separate § 1681e(a) requirement. [6/] Under settled circuit law, "*negligently or willfully fail*[ing] *to comply with any 'requirement' imposed by the FCRA*" is actionable. ***Hansen***, *infra, 582 F.2d at 1219.*

However, the record is not fully developed—not all Defendants have filed a responsive pleading, **ER 45 - 60**, the Doe defendants have yet to be identified (because Mr. Garrett **refused** to cooperate in commencing discovery early [7/]) discovery has not yet opened—the FCRA issues are **not** ripe for appellate **review** .

---

[3/] AOB, DktEntry: 10-1, p. 73, ¶ 1 (int. p. 58, ¶ 1)

[4/] *Id.*, ¶ 2.

[5/] *Id.*, ¶ 3.

[6/] *Ibid.*

[7/] AOB, DktEntry: 10-1, p. 38, ¶ 1 (int. p. 23, ¶ 1)

**B.    The Record Is Not Developed Sufficiently For Review**

The Ninth Circuit Court of Appeals is not a *nisi prisi* tribunal, **Columbus-Am. Discovery Grp. v. Alt. Mut. Ins. Co.** *(4ᵗʰ Cir. 1995) 56 F.3d 556, 575-76*, lacks original jurisdiction of the FCRA violations, <u>15 U.S.C. § 1681p</u>, and functions as an appellate court. <u>Judiciary Act of 1891</u> (26 Stat. 826). A function that cannot be carried out on the present *virgin* record. Ignoring that chasm, Defendants want to forget about Answering the Complaint, zoom right around discovery and pre-trial motion stages, hippety-hop over a duly-invoked jury trial request and just litigate in the Ninth Circuit Court of Appeals—sans evidence and solely on the **<u>arguments</u>** of their lawyer, Mr. Garrett.

To make that scheme work, the truth is dropped like ineffective meds once past the words "*Answering Brief* ".

The fact and existence of **<u>other</u>** third parties—**<u>not</u>** lawyers—who were given Plaintiff's credit reports is nowhere in the contents, replaced by the fiction that Defendants only released the credit reports just to Experian's own lawyers. This lie is then wrapped in make-believe by Mr. Garrett who asserts that Plaintiff's "*theory*" for suing Experian is that it "*shared*" Plaintiff's credit reports with its lawyers. Mr. Garrett asserts that the Fifth Circuit Court of Appeals had "*considered*" the exact same "*theory*" and found it "*frivolous*."

### C.    Why The Fifth Circuit Issued Its Order Remains A Mystery

Exactly why the Fifth Circuit found that appeal "*frivolous*" does **not**—as Mr. Garrett otherwise portrayed—appear on the face of the record.

### D.    Business Need Argument Is Makeweight And A Jury Question

The bare-assed arguments about "*legitimate business need*" are improperly asserted in violation of <u>Ninth Circuit Rule 28-2.8</u>; Mr. Garrett's assertions—purely lawyer's bombast—are not evidence, are unsupported with not even a *tweet*; and runs afoul of persuasive authority, see Chi Chi Wu & Elizabeth DeArmond, <u>Fair Credit Reporting</u> (7th ed. 2011) (this section "*does not provide authority for using a consumer report in litigation if authority to do so does not otherwise exist.*") § 7.2.8.3 <u>Business Need to Review A Consumer's Account</u>, p. 292.

### E.    Credit Reports May Only Be Pulled For One Of Six Reasons

The Ninth Circuit expressly *rejected* the argument that credit reports may be pulled for litigation use because that is "*a purpose unrelated to 'an individual's eligibility for credit, insurance or employment'.*" **Mone v. Dranow** (9th Cir. 1991) 945 F.2d 306, 308 (per curiam) (citing cases) and "*because a consumer reporting agency can legally issue a report only for the purposes listed in § 1681b.*" **Hansen**, *infra*, 582 F.2d at 1219.

**F.    The Plain Language Of The FCRA Does Not Support Defendants**

Defendants also argue that in another part of the country litigation creates a

"*legitimate business need*" for a credit report under 15 U.S.C. § 1681b(a)(3)(F).

Perhaps, but we are not in Kansas anymore.  Their fall-back argument is madly

inconsistent with their position before the United States Supreme Court [8]; was

rejected by the Ninth Circuit; is contrary to the plain language of the FCRA

defining a legitimate business need as one arising from a credit transaction—not a

lawsuit—*initiated by the consumer*.  See, *ante*, footnote 8.

**G.    The Ninth Circuit Has Defined A Consumer Report Using The
       Plain Language Of The Statute – Statutory Construction 101**

Mr. Garrett's arguments also fail because they float on the quicksand

contentions of a Texas district court's blind definition of a "*consumer report*".

But we are not in Texas either.  His arguments are foreclosed by the Ninth

Circuit's decision in **Hansen v. Morgan** *(9ᵗʰ Cir. ) 582 F.2d 1214, 1218*; the Ninth

Circuit's definition of a "*consumer report*"—we are sure Defendants will be

gratified to know—*does* rely on the plain language of the FCRA.

---

[8] See Experian's <u>Petition for a Writ of Certiorari</u>, Sup. Crt. No. 10-251, **DN 64-1, p. 146, ¶ 4**:  "*§ 1681b(a)(3)(F)(i)—which creates a permissible purpose to access a consumer report for a 'legitimate business need'—is expressly limited to a* ***'transaction*** *that is initiated by the consumer.* '" Construing the FCRA as a whole, the term "*transaction*" refers to a ***credit*** transaction.  A lawsuit is not a credit transaction; you either pay the filing fee or it is waived.

Experian and <u>Jones, Day, Reavis & Pogue</u>, who harshly criticized the Ninth Circuit before the Supreme Court for **not** "*following the plain language*" of the FCRA now want to ignore the very same language it trumpeted so loudly! **AOB 84, ¶ 2** (int. p. 69).

## VIII. Conclusion

"*The* **litigation use intended and employed by Defendants** *was solely to harass, embarrass and distress Plaintiff and threaten to invade further the privacy and confidentiality of Plaintiff . . . .*" **Appellants SER 4:13-16, ¶ 40.** Such use is hardly permissible.

Mr. Garrett attacks the Plaintiff as a "*serial litigant*". Cute. But "*. . . the simple fact that a plaintiff has filed a large number of com-plaints, standing alone, is not a basis for designating a litigant as "vexatious."* **Moske v. Evergreen Dynasty Corp.** *(9th Cir. 2007) 500 F.3d 1047, 1061.*

The Defendants violated federal law and Plaintiff's rights. "[T]*here is no indication in the instant case that the protection provisions of the FCRA are reserved for only those who have done no wrong.*" **St. Paul Guardian Ins. Co. v. Johnson** *(5th Cir. 1989) 884 F.2d 881, 883.*

Dated: 2013 December 03

By: _____

B. Benedict Waters, **Plaintiff**, *Pro Se*

## **Certificate of Compliance**

Plaintiff-Appellant states that this Reply Brief complies with the type-volume limitation of less than 7,000 words set forth in Rule 32(a)(7)(B), because this Brief, exclusive of Rule 32(a)(7)(B)(iii) items contains **3,758** words.

This brief is submitted with Appellant's Supplemental Excerpts of Record.

Submitted —
2013 December 04

By

B. Benedict Waters
**Plaintiff,** *Pro Se*

# No. 13-55378

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

===================

**B. Benedict Waters,**
    *Plaintiff and Appellant,*

vs.

**Experian Information Solutions, Incorporated,** et al.,
    *Defendants and Appellees.*

**U. S. District Court, Case No. 02:12-CV-04895-CAS-AJWx**

**Appeal - U. S. District Court Central District of California**
*Christina Ann Snyder, Judge*

===================

# Proof of Service

===================

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DEC 0 9 2013

FILED
DOCKETED _____
    DATE       INITIAL

B . B e n e d i c t  W a t e r s

**Plaintiff – Appellant,** *pro se*

6230 Wilshire Blvd., #182 ● Los Angeles, California 90048 ● 310-967-3943

## **Certificate of Service**

I, Arlene Johnson, certify that I am a citizen of the United States and am employed in the State of California, am over the age of eighteen years, and am not a party to the above-entitled appeal.  My business address is 6230 Wilshire Blvd., # 182, Los Angeles, California, 90048-5104 and my telephone number is 310-967-3943.

On 2013 December 05,  I served copies of *Reply Brief **AND** Appellant's Supplemental Excerpts of Record* on the following by placing same in a sealed envelope, first-class mail postage prepaid and depositing same in the United States mail addressed accordingly as:

> Angela M. Taylor
> **Jones, Day, Reavis & Pogue**
> 3161 Michelson Drive, Suite 800
> Irvine, CA 92612-4408

I hereby certify under the penalty of perjury that the foregoing is true and correct. Executed 2013 December 05, at Los Angeles, California.

_____

Signature of Person Making Service